NO. 07-11-00127-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 25, 2012

DARRELL EUGENE HUTCHERSON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 10-06-7093; HONORABLE PAT PHELAN, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Darrell Eugene Hutcherson, appeals his conviction for the offense of murder,[1] and resulting sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of 45 years. We affirm.

Background

On May 13, 2009, Levelland police were called to 306 Avenue E about an assault. Upon arriving at the location, officers discovered Assie Silva lying on his back

---

[1] See TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011).

with several significant injuries to his face. Of greatest concern was that Silva's tongue was swollen to such an extent that it was causing him to have difficulty breathing. Paramedics removed Silva from the scene and took him to the emergency room at Covenant Hospital in Levelland. By the time he arrived at the hospital, Silva had slipped into a coma.

Because it was determined that Silva needed to be seen by a neurosurgeon, he was transported to Covenant Hospital in Lubbock. Silva was diagnosed with a diffuse axonal injury, which was explained to be an injury to the blood vessels and cells of the brain that caused Silva's coma. Silva had also suffered mandible fractures, a broken cheek, rib fractures, and other injuries. Silva remained on a ventilator and in the coma for two months following the assault with no signs of improving mental functioning. Eventually, members of Silva's family made the decision to withdraw care from Silva. Silva died within minutes of the removal of the ventilator. Dr. Brian Norkiewicz, one of Silva's treating doctors at Covenant in Lubbock, identified the cause of Silva's death as being brain injury resulting from the May 13 assault.

Following Silva's death, Dr. Fernandez[2] performed an autopsy examination on Silva. However, at trial, the State offered the testimony of Dr. Sridhar Natarajan, the chief medical examiner for Lubbock County and the supervisor of Dr. Fernandez at the time of the Silva autopsy, rather than offering the testimony of Dr. Fernandez.[3] Prior to

---

[2] The record does not identify Dr. Fernandez's first name.

[3] Based on statements made by counsel in a hearing held outside the presence of the jury, it does not appear that Dr. Fernandez was unavailable to testify; rather, it

Dr. Natarajan testifying, appellant objected that Natarajan testifying about the autopsy performed by Fernandez would violate appellant's Sixth Amendment right to confront and cross-examine witnesses against him. After hearing the arguments of counsel, the trial court overruled appellant's objection. Dr. Natarajan testified, over appellant's confrontation, hearsay, and relevance objections, that the cause of Silva's death was delayed medical complications due to blunt force head and facial trauma. Dr. Natarajan also testified, again over appellant's confrontation and relevance objections, that the manner of Silva's death was homicide.

At the close of evidence, appellant requested the inclusion of an application paragraph in the jury charge that essentially would have instructed the jury that it could not find appellant guilty of causing the death of Silva unless it determined that there was no intervening cause of Silva's death. The trial court heard the argument of counsel regarding this requested instruction, and overruled appellant's request. Appellant also requested an alternative instruction presenting intervening cause as a defense. This requested instruction was also rejected by the trial court. The jury found appellant guilty of the offense of murder. After hearing punishment evidence, the jury sentenced appellant to 45 years imprisonment. It is from this conviction and sentence that appellant now appeals.

Appellant presents three issues by his appeal. By his first issue, appellant contends that the trial court violated his Sixth Amendment right to confront and cross-examine witnesses against him by allowing Dr. Natarajan to testify as to the cause of

appears that the State did not call Dr. Fernandez because it would have been inconvenient to have done so.

3

Silva's death. By his second issue, appellant contends that the trial court erred by refusing to include an application paragraph about intervening or superseding cause in the jury charge. By his third issue, appellant contends that the evidence was insufficient to prove that appellant's actions caused the death of Silva.

## Confrontation Right

By his first issue, appellant contends that the admission of Dr. Natarajan's testimony regarding Silva's cause of death violated appellant's right to confront and cross-examine witnesses against him in violation of the Sixth Amendment to the United States Constitution. The State responds contending that Dr. Natarajan's testimony regarding Silva's cause of death did not violate appellant's confrontation rights.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The confrontation right also applies to out-of-court statements that are testimonial in nature. Crawford v. Washington, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68. Whether a particular out-of-court statement is testimonial is a question of law. De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App. 2008). Generally speaking, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Id. Error in admitting evidence in violation of a defendant's confrontation

4

right is constitutional error, which necessitates reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. See TEX. R. APP. P. 44.2(a); Wood v. State, 299 S.W.3d 200, 214 (Tex.App.—Austin 2009, pet. ref'd).

In his argument of this issue, appellant presents a thorough analysis of the development of the case law relating to claims of confrontation rights violations and autopsy reports. However, appellant's contention that the testimony of Dr. Natarajan violated his confrontation rights is that "it became apparent from several of Dr. Natarajan's responses that he had based his conclusions largely upon discussions on the cause of death with his absent colleague, Dr. Fernandez." While the record reveals that Dr. Natarajan's conclusions were based largely on his discussions with Dr. Fernandez, it also reflects that Dr. Natarajan did not testify as to what Dr. Fernandez concluded to be the cause of Silva's death. Likewise, the State did not offer the autopsy report prepared by Dr. Fernandez into evidence.[4] As such, Dr. Natarajan's testimony did not violate appellant's confrontation rights because it was not testimonial hearsay. See Crawford, 541 U.S. at 68. Rather, Dr. Natarajan testified about his opinion regarding the cause of Silva's death, and was subject to cross-examination regarding the bases upon which that opinion rested as well as the reliability of the methods utilized to reach his opinion.

---

[4] For purposes of this opinion, we will assume, without deciding, that Dr. Fernandez's identification of Silva's cause of death, and the autopsy report he prepared related to Silva were testimonial. See Martinez v. State, 311 S.W.3d 104, 111 (Tex.App.—Amarillo 2010, pet. ref'd) (whether an autopsy report is testimonial must be determined on a case-by-case basis).

5

Furthermore, as we explained in <u>Martinez</u>, the Confrontation Clause is not violated merely because an expert bases an opinion on inadmissible testimonial hearsay. <u>Martinez</u>, 311 S.W.3d at 112 (citing <u>Wood</u>, 299 S.W.3d at 213). This is so because the testifying expert's opinion is not hearsay and the testifying expert is available for cross-examination regarding his opinion. <u>Id</u>. Because Dr. Natarajan did not disclose the testimonial hearsay upon which his expert opinion was based, the jury only heard the direct, in-court testimony of Natarajan, and appellant's confrontation rights were not violated. <u>See</u> <u>id</u>. Unlike in <u>Martinez</u>, Dr. Natarajan did not disclose to the jury the testimonial statements contained in Dr. Fernandez's autopsy report or obtained by Natarajan from his discussions with Fernandez. <u>See</u> <u>id</u>.

Because Dr. Natarajan's testimony regarding Silva's cause of death did not violate appellant's confrontation rights, we overrule appellant's first issue.

## Charge Error

By his second issue, appellant contends that the trial court erred by refusing to instruct the jury in the court's charge regarding intervening or superseding cause of Silva's death.[5] The State responds that the defensive theory advanced by appellant

---

[5] Initially, appellant requested that the following be included in the application paragraph of the court's charge on murder: "You must first decide if the Defendant caused the death of Assie Silva without the contribution of an intervening cause. If you agree that an intervening cause exists, then you must find the Defendant not guilty of murder." Similar application paragraph language was requested as to the various lesser-included offenses of murder included in the charge.

Alternatively, appellant requested an instruction paragraph that would provide, "You are instructed that it is a defense to caus[ing] a death if you find an intervening cause, as the term is used herein. And if you so find from the evidence before you that

has not been recognized as a defense in Texas, such a theory merely seeks to negate an element of the charged offense, and the inclusion of the requested instructions would constitute an improper comment on the weight of the evidence by the trial court.

At trial, appellant elicited testimony from Dr. Norkiewicz that, while it was not likely that Silva would recover from the injuries inflicted by the assault, he would not have died when he did if the ventilator had not been removed.  Appellant further raised questions regarding the propriety of Silva's family making the decision to remove the ventilator.  On appeal, appellant points to the lack of direct evidence establishing that it would have been medically impossible for Silva to recover from his injuries, and posits that the removal of the ventilator was an intervening cause of Silva's death.

When presented with a jury charge complaint, we review the charge under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g).  Under Almanza, we must first determine whether error exists in the charge and, if we find error, whether such error caused sufficient harm to compel reversal.  See Ngo v State, 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005).

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury."  TEX.

---

an intervening cause exists as to cause of death, then you will find the Defendant not guilty."  Like the requested application paragraph, appellant requested that this instruction be applied to each of the lesser-included offenses of murder included in the charge.

7

CODE CRIM. PROC. ANN. art. 36.14 (West 2007); Walters v. State, 247 S.W.3d 204, 208 (Tex.Crim.App. 2007). The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. TEX. PENAL CODE ANN. §§ 2.03(d), 2.04(d) (West 2011); Walters, 247 S.W.3d at 208–09. A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. Walters, 247 S.W.3d at 209.

Generally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Texas Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. Id. at 212 (relying on rationale of Giesberg v. State, 984 S.W.2d 245, 250 (Tex.Crim.App. 1998)). In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence. Id. Special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge. Id. at 211. We will evaluate appellant's proposed instruction in light of the three considerations outlined in Walters.

(1) Not grounded in the Texas Penal Code

The Texas Penal Code does not specifically provide a defense, affirmative defense, or justification for intervening cause. See TEX. PENAL CODE ANN. §§ 2.03(a) (providing that "[a] defense to prosecution for an offense in this code is so labeled by

8

the phrase: 'It is a defense to prosecution . . . .'"), 2.04(a) (providing that "[a]n affirmative defense in this code is so labeled by the phrase: 'It is an affirmative defense to prosecution . . . .'"), 8.01–.07 (West 2011) (defining general defenses and affirmative defenses to criminal responsibility), 9.01–.63 (West 2011) (covering justifications excluding responsibility).  Also absent is an offense-specific defense in the nature of the proposed instructions.  See id. §§ 19.02-.06 (West 2011 & West Supp. 2011).  As a general rule, if the instruction is not derived from the Texas Penal Code, it is not "the law applicable to the case" as contemplated by article 36.14.  See Walters, 247 S.W.3d at 214.

## (2) Covered elsewhere in the jury charge

Both of the instructions appellant requested in the charge went to whether there was an intervening cause of Silva's death other than the assault committed by appellant.  The jury charge tracked the relevant statutory language identifying the elements of the charged offenses of murder, manslaughter, and criminally negligent homicide.  As applied, the charge informed the jury that, to find appellant guilty of any of these offenses, it had to find beyond a reasonable doubt that appellant caused Silva's death by hitting him in the head.  Furthermore, the charge defined "intervening cause" as "an event that comes between the initial event in a sequence and the end result, thereby altering the natural course of events that might have connected a wrongful act to an injury."

A requested instruction that does no more than challenge an element of the offense the State was called on to prove was the type of instruction addressed in

Giesberg, 984 S.W.2d at 250.  In Giesberg, the Texas Court of Criminal Appeals explained why the trial court did not err in refusing to include an "alibi" instruction:

> A defensive issue which goes no further than to merely negate an element of the offense alleged by the State in its indictment does not place a burden of proof upon a defendant to establish it.  The burden of proof is upon the State to prove those allegations.  An alibi only traverses those allegations and casts doubt upon whether the State has met its burden.  As a result, an alibi is sufficiently embraced in a general charge to the jury that the defendant is presumed innocent until he or she is proven guilty beyond a reasonable doubt.  There is ample room within that instruction for a defendant to effectively argue his defense of alibi to a jury.

Id. (citations omitted).  Accord Barnette v. State, 709 S.W.2d 650, 652 (Tex.Crim.App. 1986) (it is not error to deny requested instruction on "alternative cause" which "is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case.").

In the present case, to prove the offenses of murder, manslaughter, and criminally negligent homicide, the State had to prove beyond a reasonable doubt that appellant caused Silva's death by hitting him in the head.  Appellant's defensive theory that the removal of Silva's ventilator was an intervening cause of Silva's death went directly to an element on which the State bore the burden of proof beyond a reasonable doubt.  Further, nothing in the jury charge prevented the jury from considering whether the removal of Silva's ventilator was an intervening cause of Silva's death that would negate the State's proof that appellant's assault on Silva was the cause of Silva's death. See Walters, 247 S.W.3d at 213.  As such, we conclude that the substance of the instructions requested by appellant was adequately addressed in the jury charge.

(3) Focusing jury's attention on specific type of evidence

Because the defensive issue concerning the cause of Silva's death was adequately accounted for within the general charge to the jury, a special instruction on intervening cause would have needlessly drawn the jury's attention to the evidence of the propriety of Silva's family's decision to remove the ventilator, rather than on the causal link between appellant's assault on Silva and his subsequent death. Therefore, the special instruction on intervening cause would have constituted an unwarranted comment by the trial court on the weight of the evidence. See id. at 210; Giesberg, 984 S.W.2d at 250.

As each of the three relevant factors favor the trial court's refusal of appellant's requested instructions, we conclude that the trial court did not err by refusing to include either of the proposed instructions in its charge to the jury. Accordingly, we overrule appellant's second issue.

Sufficiency of the Evidence

By his third issue, appellant contends that the evidence was insufficient to support the jury's verdict that appellant was guilty of causing the death of Silva. Appellant's contention is that the arguably improper removal of Silva's ventilator by the family constitutes improper treatment which breaks the causal chain between appellant's assault of Silva and Silva's death.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State,

323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. (Cochran, J., concurring). When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

In a murder prosecution, the State must prove beyond a reasonable doubt that the injuries inflicted by the defendant caused the death of the decedent. Reeves v. State, 101 S.W.2d 245, 246 (Tex.Crim.App. 1937). If the injuries caused by the defendant contributed to the death of the deceased, he is responsible even though other contributing causes existed. See Wright v. State, 388 S.W.2d 703, 706 (Tex.Crim.App. 1965). This is true even if complications arise during treatment of the victim unless the evidence shows that those complications can be attributed to gross neglect or improper treatment. See Jones v. State, 582 S.W.2d 129, 134 (Tex.Crim.App. 1979).

12

Looking to appellant's specific argument in support of his claim that the evidence is insufficient to establish that he caused Silva's death, he simply asserts that Silva's family's decision to have the ventilator removed was done "without proper legal authorization." A review of the record establishes that there was enough evidence admitted to have allowed the jury to make a reasonable inference that the family's decision to remove the ventilator was done without proper legal authorization. However, the record also contains testimony from Dr. Norkiewicz identifying the cause of Silva's death as brain injury resulting from the assault, and Dr. Natarajan concluding that Silva died from "delayed medical complications due to blunt head and facial trauma" and that his death was a homicide. When, as here, there is a conflict in the evidence, a reviewing court must defer to the jury's determination of the credibility and weight to be afforded to the evidence. See Brooks, 323 S.W.3d at 899. The evidence from each of the two doctors that appellant's assault of Silva was the cause of Silva's death is sufficient evidence to support the jury's determination that appellant was guilty of murder beyond a reasonable doubt.

Because sufficient evidence was admitted to support the jury's conviction of appellant for the murder of Silva, we overrule appellant's third issue.

## Conclusion

Having overruled each of appellant's three issues, we affirm the judgment of the trial court.

Mackey K. Hancock<br>
Justice

Publish.

13