**Opinion issued June 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00461-CR**

———————————

**PATRICK GLENN SOWELLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1352806**

---

**MEMORANDUM OPINION**

A jury convicted appellant Patrick Glenn Sowells of aggravated robbery with

a deadly weapon. *See* TEX. PENAL CODE § 29.03. The court assessed punishment at

35 years in prison. Sowells raises two evidentiary issues on appeal. First, he argues

that the trial court erred by admitting evidence from a warrantless search of his car

while it was impounded. Second, he argues that a PowerPoint presentation admitted into evidence in connection with a gang expert's testimony during the punishment phase violated the Confrontation Clause.

We conclude the search of the impounded car was supported by probable cause to believe it was the instrumentality of another crime under investigation. We further conclude that Sowells has not identified any testimonial hearsay included on the PowerPoint slides so as to violate the Confrontation Clause. Accordingly, we affirm the judgment of the trial court.

## Background

One evening, Mohammed Abdlahi and his friends tried to go to a Houston nightclub. They encountered appellant Patrick Sowells and Joshua Johnson, who told them the venue had closed for the night. Abdlahi and his friends then proceeded to another club nearby. As they attempted to park, they noticed a tan Chrysler 300 following them. Abdlahi recognized the men in the car as the same ones they had encountered outside the first club. Unable to find a place to park, Abdlahi left the parking lot and stopped in an apartment complex to drop off his friends. While he was still parked in the apartment complex's parking lot, the tan Chrysler 300 pulled up behind him. Sowells and Johnson, armed with guns, robbed Abdlahi and stole his car.

The Chrysler 300 was abandoned, and in response to a call about a "suspicious vehicle," police discovered it at another apartment complex with its door open and a handgun lying on the floorboard. An officer searched the car for evidence of ownership and found a traffic citation issued to Sowells. The vehicle also had several other papers with varying names. The car was towed to police custody, and someone subsequently retrieved it from the storage lot.

Two nights after Abdlahi was robbed, Lauren Deberry (the complainant in this case) and Cruse Williams pulled into a motel parking lot near the second club where Abdlahi encountered Sowells and Johnson. After Deberry and Williams left their car, Sowells and Johnson emerged from a tan Chrysler with a gun. The men threatened them and took their belongings. Cruse fled, and two shots were fired in his direction. The entire encounter was captured by a surveillance camera.

The night after Deberry was robbed, Officer A. Schattle received an emergency tip about yet another robbery, then in progress. Sowells and Johnson fled that crime scene in a tan Chrysler 300. Officer Schattle apprehended them and conducted a brief search of the vehicle. Sowells and Johnson were arrested, the Chrysler 300 was impounded, and Officer Schattle conducted an inventory search of the car.

Abdlahi's car subsequently was found at the same location where the Chrysler 300 previously was abandoned. Sergeant S. Wilson was investigating the Abdlahi

robbery, and her initial lead was a description of a "brown or tan" Chrysler 300. Sgt. Wilson heard from a fellow officer about the Chrysler which was found abandoned. After reviewing the file, she identified Sowells as a possible suspect.

Sgt. Wilson went to the storage lot to look at the impounded Chrysler 300. She conducted a warrantless search of the vehicle and found Abdlahi's keys, as well as a gold necklace that matched a description of an item stolen from Abdlahi's companion. After Sgt. Wilson showed him a photo array, Abdlahi tentatively identified Sowells.

Sowells was charged with aggravated robbery with a deadly weapon. The State alleged that he used a firearm to steal Deberry's property. At trial, the State sought to admit evidence relating to Abdlahi's robbery as evidence of Sowells's methods. Sowells moved to suppress the evidence recovered from Sgt. Wilson's search of the Chrysler 300 while it was impounded because it was obtained from an illegal search. The trial court denied the motion to suppress and admitted Abdlahi's keys and his friend's necklace, which were discovered as a result of Sgt. Wilson's search. Sowells renewed his objections when this evidence was offered at trial.

The jury found Sowells guilty of aggravated robbery with a deadly weapon. Sowells elected to have the court assess punishment. At the punishment phase of trial, the State called Sergeant J. Wood as an expert on gang culture and behavior. Sgt. Wood testified that he had investigated Sowells and discovered that he held a

high-ranking position in the Forum Park Crips, a small street gang that dealt primarily in narcotics sales but also frequently committed other crimes. Sgt. Wood testified about the history and leadership structure of the gang, its methods, and the general location where it operated. He provided detail about the gang's leadership, and he asserted that Sowells was a high-ranking member of the organization.

Sgt. Wood created a PowerPoint presentation about the Forum Park Crips for use at police stations, and after he summarized his findings about the gang's character and Sowells's role within the gang, the State offered into evidence a printout of the presentation. Sowells objected to the admission of the document:

| | |
|---|---|
| Counsel: | And the defense objects to State's Exhibit No. 60. It's a presentation that's prepared. There is — it is compiled of hearsay. It is a definite violation of the Confrontation Clause in that we can't question any of the people, or ascertain exactly where this information came from, where they got the information, and what their basis of knowledge was for said information. As a result, we object, Your Honor. |
| Court: | All right. That will be overruled. I think it will help me in understanding his testimony. |

The presentation contained charts explaining the structure of the gang, its suspected criminal activity, pictures taken from social media showing Sowells associating with other gang members, and short biographies of key members. The chart did not contain any quotations or other statements from third parties. Sgt. Wood stated that some of the information from the presentation resulted from his interviews with

street gang members, including the gang's leader, Coy Thompson. Sowells did not challenge Sgt. Wood's status as an expert witness or ask about the specific gang members he interviewed.

The State mentioned Sowells's membership in the Forum Park Crips in its closing argument, and it also described his prior offenses and his own statements about his work as a drug dealer. The trial court assessed punishment at 35 years in prison, also mentioning Sowells's gang membership when pronouncing the sentence. Sowells appealed.

**Analysis**

Sowells raises two issues on appeal. First, he asserts that the trial court erred by denying his motion to suppress the evidence that Sgt. Wilson seized from the warrantless search of the impounded Chrysler 300. Second, he claims that the trial court's admission of the PowerPoint presentation violated his rights under the Sixth Amendment's Confrontation Clause.

**I.    Warrantless search of impounded car**

In his first issue, Sowells argues that Sgt. Wilson's warrantless search of the impounded Chrysler 300 was a violation of his Fourth Amendment rights. He therefore contends that the trial court erred by denying his motion to suppress the evidence gained from that search—Abdlahi's keys and his friend's necklace.

Sowells contends that because several days had passed since he was arrested by Officer Schattle and a prior inventory search of the car already had been conducted, Sgt. Wilson's later search could not be considered either a search incident to arrest or an inventory of the vehicle. He asserts that at the time of her search, Sgt. Wilson lacked sufficient information to have probable cause to search the car, and she did not demonstrate probable cause at trial.

Both the United States Constitution and the Texas Constitution protect the right of the people to be free from unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The Texas exclusionary rule states that any evidence which was acquired in violation of either the U.S. Constitution or Texas Constitution is inadmissible against the accused in a criminal case and must be disregarded by the jury. *See* TEX. CODE CRIM. PROC. art. 38.23(a).

A valid justification for a warrantless search of an automobile does not vanish once the car is immobilized and impounded, even if an inventory search already has been conducted. *Florida v. Meyers*, 466 U.S. 380, 382, 104 S. Ct. 1852, 1853 (1984). A vehicle "lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) (quoting *United States v. Johns*, 469 U.S. 478, 484, 105 S. Ct. 881, 885 (1985)).

When a defendant moves to suppress evidence based on a warrantless search, the State bears the burden of showing that probable cause existed for the search. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013). "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005). Probable cause is based on "the sum total of layers of information, and not merely individual layers and considerations, that a reasonable and prudent man acts upon." *Id*. The determination of whether an officer has probable cause "is a factual one based on the sum of all the information known to the officer at the time of entry." *Parker v. State*, 206 S.W.3d 593, 600 (Tex. Crim. App. 2006).

Sowells argues that the State did not provide evidence of probable cause to justify the search. He relies in part on Sgt. Wilson's testimony that she merely was "looking for information about the car." However, an officer's subjective purpose in searching a vehicle is not the proper basis for a probable cause analysis. Instead, probable cause is an objective determination based on what a reasonable person would believe based upon "the sum of all the information known to the officer at the time of entry." *Id.*; *Estrada*, 154 S.W.3d at 609.

Applying this standard, we conclude that Sgt. Wilson had probable cause to search the vehicle in furtherance of her investigation of the Abdlahi robbery. She had descriptions of both the suspects and the "tan or brown" Chrysler 300 they had been driving. Through her investigation, she discovered that a car fitting that description had been abandoned in a nearby apartment complex and reported as a "suspicious vehicle," with a pistol left in the floorboard and a traffic ticket bearing Sowells's name. She also discovered through her investigation that Sowells recently had been arrested and that his car—a "gold Chrysler 300" had been impounded.

Based on this information, Sgt. Wilson had probable cause to search the impounded gold Chrysler 300 to determine whether it was an instrumentality of the crime she was investigating, the robbery of Abdlahi. That robbery was committed by suspects who had been driving a "tan or brown" Chrysler 300, and a car of the same description recently had been discovered abandoned near the scene of the robbery, with evidence linking it to Sowells. The Chrysler was impounded in connection with Sowells's arrest for another robbery. Regardless of Sgt. Wilson's stated reason for searching the vehicle, the State provided evidence of facts and circumstances within her knowledge that established probable cause for the search. *See Parker*, 206 S.W.3d at 600; *Estrada*, 154 S.W.3d at 609.

We conclude that the State provided sufficient evidence of probable cause for the warrantless search of the impounded Chrysler. *See Meyers*, 466 U.S. at 382, 104

S. Ct. at 1853; *Turrubiate*, 399 S.W.3d at 151. Based on its implied factual findings, the trial court correctly exercised its discretion to deny Sowells's motion to suppress the evidence resulting from that search. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We overrule Sowells's first issue.

## II. Admission of PowerPoint presentation as punishment evidence

The punishment stage of trial was conducted before the court, sitting without a jury. In his second issue, Sowells asserts that the trial court erred by admitting into evidence the PowerPoint presentation prepared by Sgt. Wood. Sowells contends that the admission of this document violated his rights under the Confrontation Clause of the Sixth Amendment. The PowerPoint presentation incorporated information gathered from interviews conducted by Sgt. Wood. Because the subjects of the interviews were not brought into court for cross-examination, Sowells argues that the presentation effectively was comprised of testimonial out-of-court statements that violated his right to confront witnesses. Sowells takes particular issue with a slide that detailed the hierarchy and structure of the gang and indicated that he had a leadership role. He asserts that harm is evident because the prosecution discussed his gang involvement in its closing argument for punishment, and the judge mentioned his role in the gang during sentencing.

Regardless of whether punishment is assessed by the court or the jury, "evidence may be offered by the state and the defendant as to any matter the court

deems relevant to sentencing" including evidence of reputation, character, or extraneous offenses. TEX. CODE CRIM. PROC. art. 37.07, § 3(a). A witness qualified by knowledge, skill, experience, training, or education may testify on a specialized subject if the testimony would assist the trier of fact in understanding or determining a fact issue. TEX. R. EVID. 702. An expert witness may state an opinion and give the reasons for it without disclosing the underlying facts or data, but the expert may be required to disclose the underlying facts on cross-examination. TEX. R. EVID. 705. Expert testimony can be admitted as character evidence during the punishment phase to show a defendant's membership or association with a gang and the gang's character and reputation. *See, e.g.*, *Garcia v. State*, 239 S.W.3d 862, 867 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Stevenson v. State*, 963 S.W.2d 801, 803–04 (Tex. App.—Fort Worth 1998, pet. ref'd).

The Sixth Amendment's Confrontation Clause states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Out-of-court statements offered against the accused that are "testimonial" in nature should be excluded unless the prosecution can show that the out-of-court declarant is unavailable to testify in court and that the accused had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004). "Testimonial" statements typically are solemn declarations made for the purpose of establishing

11

some fact. *Id.* at 51, 124 S. Ct. at 1364; *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). The admission of testimonial statements may be harmful at the punishment phase of trial as well as the guilt–innocence phase. *See Wall v. State*, 184 S.W.3d 730, 746–47 (Tex. Crim. App. 2006). An out-of-court statement from a confidential informant that is used "to pave the way for a potential criminal prosecution" is testimonial in nature. *Langham v. State*, 305 S.W.3d 568, 579 (Tex. Crim. App. 2010).

Sowells's objection in the trial court did not identify any specific hearsay in the presentation, but instead he asserted generally that it was "compiled of hearsay." Sowells asserted both in the trial court and on appeal that the presentation violated the Confrontation Clause because he could not "question any of the people" who Sgt. Wood interviewed to make the presentation. This objection did not specify the precise information in the presentation that Sowells believed was testimonial hearsay.

Sowells's brief on appeal does somewhat more to identify which parts of the exhibit he believes violated the Confrontation Clause. The brief references "the organizational and leadership structure of the Forum Park Crips" that Sgt. Wood "had pieced together . . . through the interviewing of criminal street gang members, [and] talking with Mr. Sowells himself." Sowells argues that because he could not cross-examine those street gang members, his confrontation rights were violated.

However, the Confrontation Clause is not necessarily violated when an expert bases an opinion on inadmissible testimonial hearsay because the expert is available for cross-examination regarding his opinion. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 317–18, 129 S. Ct. 2527, 2536 (2009); *Wood v. State*, 299 S.W.3d 200, 213 (Tex. App.—Austin 2009, pet. ref'd). When the expert does not disclose the testimonial hearsay upon which his testimony is based, it does not violate the defendant's confrontation rights. *Hutcherson v. State*, 373 S.W.3d 179, 183–84 (Tex. App.—Amarillo 2012, pet. ref'd). The gang organizational chart included in Sgt. Wood's PowerPoint presentation did not disclose the testimonial hearsay, if any, upon which it was based. *See id.* The presentation reflected Sgt. Wood's expert opinion, and he was available for cross-examination on the subject. *See Wood*, 299 S.W.3d at 213.

Sowells's brief also identifies several of the people that Sgt. Wood acknowledged that he interviewed, including Coy Thompson (the alleged leader of the gang), people leaving a vigil after Thompson's death, and other members of the gang in custody. While Sgt. Wood disclosed these sources on cross-examination, *see* TEX. R. EVID. 705(a), he did not disclose their actual statements or any testimonial hearsay statements they made. *See Hutcherson*, 373 S.W.3d at 183–84; *cf. Langham*, 305 S.W.3d at 579–80 (right to confrontation violated when detective disclosed confidential informant's testimonial hearsay statements in more detail than

necessary to provide background). Instead, he gave his expert opinion after investigating these underlying sources.

Both at trial and on appeal, Sowells failed to identify any specific testimonial hearsay within the presentation. Accordingly, he has not shown any violation of his Confrontation Clause rights resulting from the admission of the PowerPoint slides. *See Wall*, 184 S.W.3d at 746–47; *Russeau*, 171 S.W.3d at 880. We overrule Sowells's second issue.

## Conclusion

We find no error in the denial of the motion to suppress the evidence discovered from Sgt. Wilson's warrantless search of the impounded car. We further conclude that Sowells has not shown a violation of the Confrontation Clause in the admission of the PowerPoint presentation. Accordingly, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

14